**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **JEFFREY W. CONYER** | § | **CIVIL ACTION NO:** |
| | § | |
| *Plaintiff* | § | |
| **v.** | § | |
| | § | |
| **FOREST RIVER, INC. AND** | § | |
| **CAMPING WORLD RV SALES, LLC** | § | |
| | § | |
| *Defendants* | § | **JURY TRIAL REQUESTED** |

<u>**COMPLAINT**</u>

### I.   Parties

1.      Plaintiffs, JEFFREY W. CONYER, has been at all times material hereto a citizen of the state of Indiana.

2.      Defendant, FOREST RIVER, INC., hereinafter "FOREST RIVER,"is an Indiana corporation with its principal place of business located in Indiana and a citizen of Indiana and is a warrantor of the RV that Plaintiff purchased and is a merchant in goods of the kind involved in this case.

FOREST RIVER's agent for service of process is Darrel O Ritchie, 900 CR 1 N, Elkhart, Indiana 46514.

3.      Defendant, CAMPING WORLD RV SALES, LLC, hereinafter "CAMPING WORLD", is a Minnesota limited liability company and a citizen of the State of Minnesota.

CAMPING WORLD is wholly owned by FreedomRoads Operations Company, LLC. FreedomRoads Operations Company, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by FreedomRoads, LLC.  FreedomRoads, LLC is a

-1-

Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by FreedomRoads Intermediate Holdco, LLC. FreedomRoads Intermediate Holdco, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by ITM Holding Company #2, LLC. ITM Holding Company #2, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by ITM Holding Company, LLC. ITM Holding Company, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by FreedomRoads Holding Company, LLC. FreedomRoads Holding Company, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by CWGS Group, LLC.

CWGS Group, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by CWGS Enterprises, LLC. CWGS Enterprises, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is owned by: (a) CWGS Holding, LLC; (b) CVRV Acquisition, LLC; © CWH BR, LLC; (d) Camping World Holdings, Inc.; (e) and certain individuals, none of which are known citizens of the State of Texas by the Plaintiff. CWGS Holding, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by ML Acquisition Company, LLC. ML Acquisition Company, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by : (I) AGI Holding Corp.; and (ii) ML RV Group, LLC. AGI Holding Corp. is a Delaware limited liability company and a citizen of the State of Delaware and is not a publicly held corporation and no publicly held corporation owns 10 percent or more of its stock.

ML RV Group, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by (1) Marcus Lemon who is a citizen of the State of Illinois; (2)

CVRV Acquisition is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by Crestview Partners II GP, LP.  Crestview Partners II GP, LP is a Delaware limited liability partnership and a citizen of the State of Delaware. The identities of the limited partners of Crestview Partners II, LP are confidential; however, none of the limited partners are known citizens of the State of Texas by the Plaintiff;  (3) CWH BR, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by Camping World Holdings, Inc.  Camping World Holdings, Inc. is a publicly traded Delaware corporation with its principal place of business in Lincolnshire, Illinois.  All publicly held companies, if any, that own ten percent (10%) or more of the named party's stock: Camping World RV Sales, LLC is not a publicly held corporation; and (4) Camping World Holdings, Inc. is a Delaware publicly traded corporation, and owns greater than 10 percent of the membership interest in CWGS Enterprises, LLC, which is an indirect parent company of Camping World RV Sales, LLC.

CAMPING WORLD's agent for service of process is CT Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204.

## II.   Jurisdiction

4.    This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involves a question of federal law.

Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202.

The court has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs' state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III. Venue

5.    Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV. Conditions Precedent

6.    All conditions precedents have been performed or have occurred.

### V.    Facts

### A.   The Transaction

7.    On April 30, 2022, Plaintiff purchased a new 2022 FOREST RIVER WOLF PACK 355PACK14 bearing VIN: 5ZT3CT1B9N1220131, hereinafter "WOLF PACK," from CAMPING WORLD.  The "WOLF PACK" was purchased primarily for Plaintiff's personal use.

8.    The sales price of the WOLF PACK was $82,781.49.  Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.  See *Hughes v. Segal Enterprises, Inc.*, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

### B.    Implied Warranties

9.    As a result of the sale of the WOLF PACK by Defendants to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the WOLF PACK would pass without objection in the trade under the contract description; and that the WOLF PACK was fit for the ordinary purpose for which such motor vehicles are purchased.

10.    Subsequent to the sale, an implied warranty arose in connection with the repairs

-4-

performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

## C.    Express Warranties

11.    In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the WOLF PACK, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the WOLF PACK had, in fact, repaired the defects.

12.    Plaintiff's purchase of the WOLF PACK was accompanied by express warranties offered by the Defendants, FOREST RIVER, and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the WOLF PACK.

13.    The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the FOREST RIVER's warranty booklet and owners manual.

## D.    Actionable Conduct

14.    In fact, when delivered, the WOLF PACK was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to the following:

"A.    A/C DEFECTS, NON-CONFORMITIES AND CONDITIONS;

-5-

**B.**     **LEVELING SYSTEM NOT INSTALLED PER PURCHASE AGREEMENT.**

**C.**     **WATER HEATER DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

**D.**     **SLIDE WALLS BULGING DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

**E.**     **FLOOR DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

**F.**     **CABINETS DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

**G.**     **AWNING DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

**H.**     **STRUCTURAL DEFECTS, NON-CONFORMITIES AND CONDITIONS WHEREIN THE RV HAS BEEN OUT OF SERVICE SINCE OCTOBER 2022 AND IS STILL UNREPAIRED.**

**I.**     **ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY AND ALL REPAIR ORDERS. "**

15.     Since purchase, Plaintiff has returned his WOLF PACK to the Defendants for repairs on numerous occasions.  Despite this prolonged period during which Defendants were given the opportunity to repair the WOLF PACK, the more significant and dangerous conditions were not repaired.  Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the WOLF PACK, continues to this day to exhibit some or all of the non-conformities described herein.

16.     The defects experienced by Plaintiff with the WOLF PACK substantially impaired its use, value and safety.

-6-

17.     Plaintiff notified the Defendants of the defective conditions in the WOLF PACK.

**VI.     Causes of Action**

**COUNT 1:     VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

18.     Plaintiff re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

19.     Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

20.     Defendants is a "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

21.     The WOLF PACK is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

22.     The express warranties more fully described hereinabove pertaining to the WOLF PACK is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

23.     The actions of Defendants in failing to tender the WOLF PACK to Plaintiff free of defects and refusing to repair or replace the defective WOLF PACK tendered to Plaintiffs constitute a breach of the written and implied warranties covering the WOLF PACK and hence a violation of the Magnuson-Moss Warranty Act.

24.     Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendantss as herein alleged.

25.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has

been damaged in an amount in excess of $200,000.00 according to proof at trial.

26.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendantss as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:    BREACH OF EXPRESS WARRANTIES AND/OR CONTRACT**

27.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

28.     The Defendants's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff's WOLF PACK or those similarly situated were free from inherent risk of failure or latent defects.  In addition, the Defendants issued an expressed written warranty which covered the WOLF PACK and warranted that the WOLF PACK was free of defects in materials and work quality at the time of delivery.

29.     As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiff a WOLF PACK that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

30.     In breach of the foregoing warranties, the Defendants has failed to correct said defects.

31.     The damages Plaintiff has suffered are a direct and proximate result of Defendants's

-8-

actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 3:    BREACH OF IMPLIED WARRANTIES

32.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

33.    The Defendants impliedly warranted that Plaintiff's WOLF PACK which it designed, manufactured, and sold, were merchantable and fit and safe for his ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

34.    Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the WOLF PACK had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiff.

35.    Because of the defects, Plaintiff's WOLF PACK is unsafe and unfit for use and has caused economic loss to the Plaintiff.  Therefore, the Defendants breached the implied warranty of merchantability.

36.    The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## VII.    Economic and Actual Damages

-9-

37.    Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

      a.    Out-of-Pocket Rule. Recovery of the difference between the price paid and the actual value of the property acquired.

      b.    Benefit of the Bargain Rule. The difference between the value of the goods and services would have had if they had been as promised and their value as delivered.

      c.    Costs of Repairs.

      d.    Loss Profits.

      e.    Loss of Use.

      f.    Diminished or reduced market value.

      g.    Damages for Mental Anguish.

### VIII.    Revocation of Acceptance and Request for Rescission

38.    Plaintiff revokes acceptance of their WOLF PACK against the Defendant, CAMPING WORLD, and is seeking a rescission of the sale under the UCC and is seeking an order necessary to restore to him any money or property, real or personal, which may have been acquired in violation of the UCC.

39.    Accordingly, Plaintiff seeks a cancellation of the purchase transaction and an order of the court restoring to him the money obtained by Defendant, CAMPING WORLD, as a result of its breach of the UCC as set forth above. Plaintiff also seeks cancellation of the debt and now offers to return the WOLF PACK to the Defendant, CAMPING WORLD.

### IX.    Attorney Fees and Costs

40.    Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

### X.    Prayer

41.    For these reasons, Plaintiff prays for judgment against the Defendants for the following:

      a.    For general, special and actual damages according to proof at trial;

      b    Rescinding the sale of the 2020 FOREST RIVER WOLF PACK bearing VIN: 4X4TWBG20LUD19296 and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

      c.    For incidental and consequential damages according to proof at trial;

      d.    Out-of-pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges;

      e.    Any diminution in value of the WOLF PACK attributable to the defects;

      f.    Past and future economic losses;

      g.    Non-pecuniary damages under Louisiana Civil Code Articles 1998, et seq.;

      h.    Prejudgment and post-judgment interest;

      i.    Attorney fees;

      j.    Costs of suit, expert fees and litigation expenses; and

-11-

k.    All other relief this Honorable Court deems appropriate.

**XI.    Demand for Jury Trial**

42.    Plaintiff hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carenco, Louisiana 70520
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF